IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHLEEN REYNOLDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1879-D |
| VS. | § | |
| | § | |
| SOVRAN ACQUISITIONS, L.P. (DBA | § | |
| UNCLE BOB'S SELF STORAGE, INC.), | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by a plaintiff who alleges that her employment was terminated on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant moves for summary judgment. Concluding that a reasonable jury could not find in plaintiff's favor on either of her claims, the court grants defendant's motion and dismisses this action with prejudice.

I

Plaintiff Kathleen Reynolds ("Reynolds") began working for defendant Sovran Acquisition, L.P. ("Sovran") as a store manager in 2009.[1] She was terminated in August

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Reynolds as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

2013, at the age of 53.  When Reynolds was preparing to hire an assistant manager in February 2012, Kevin Bagwell ("Bagwell"), her supervisor, told her, "You really want to hire a man if you can because, I don't care what they say, a man can do things around the facility that a woman can't."  Compl. 3-4.  As a result, Reynolds hired a male.  In October 2012 Bagwell made a similar comment to Reynolds when they were hiring a new assistant manager for her, stating that "a man is a preferable hire."  Bagwell hired Chris Atkison ("Atkison"), a male, without consulting Reynolds.  On one occasion, Bagwell told Reynolds that she should be, or appear to be, more "friendly and bubbly" toward people, and on another occasion Bagwell talked to Reynolds about a customer service issue in which a potential customer had complained about how she provided driving instructions to the store over the telephone.  Bagwell also made numerous statements suggesting that Reynolds was not happy in her job and should think about quitting.  For the two months preceding Reynolds' termination, Bagwell gave the store Reynolds managed satisfactory monthly evaluations, which included assessments of the store's customer relations.  The store also scored 100% on the 2013 internal audit, for which Reynolds received a congratulatory letter, gift card, and shout out in the company bulletin, a few weeks before her termination.  The store ranked 10th out of 133 stores evaluated for the year 2012.

The parties disagree about some of the facts pertinent to a customer complaint that Sovran maintains ultimately led to Reynolds' termination.  According to Reynolds, a customer came into her store and became upset with her over something she would not do because it was against company policy.  The customer asked Reynolds for the telephone

number to Store 91, stating that he knew "Brian," the store manager, and that Brian would say otherwise.  Reynolds accidentally gave the customer her own telephone number instead of the number for Store 91.  When the customer called the number and realized what had happened, he returned to Reynolds' store and again requested the telephone number for Store 91.  This time, Reynolds gave him the correct number.  Atkison was working at Store 91 that day.  Reynolds called him, told him a customer would be calling, and asked him to back her up on company policy.

According to Sovran, however, a customer who was upset with Reynolds asked her for the telephone number of her supervisor (i.e., Bagwell).  But instead of providing the customer Bagwell's telephone number, she gave him her own number.  When the customer realized what had happened, he returned to the store and again asked Reynolds for her supervisor's number.  Rather than give the customer Bagwell's number, she gave him the telephone number for Store 91, where Atkison was working that day.  Reynolds then called Atkison and asked him to pretend to be her supervisor so that she would not get in trouble.  Atkison reported the incident to Bagwell via email on or about July 24, 2013.  Bagwell forwarded the email to Mike Osciak ("Osciak") in Human Resources ("HR"), who stated that HR would investigate the complaint.  According to Sovran, Osciak spoke to Atkison regarding the allegations in his email, and Bagwell investigated the complaint by speaking to the customer and to Reynolds.  Reynolds contends, however, that there was no investigation into the allegations in Atkison's email and that HR simply backed Bagwell's decision to terminate her.

The head of HR, Osciak, Bagwell, and another area manager had a conference call regarding the incident.  They, along with a regional vice president, decided to terminate Reynolds.  Reynolds' position was initially offered to a female, who turned down the job, and was eventually filled by Atkison, a significantly younger male.

After receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), Reynolds filed this lawsuit against Sovran, asserting claims for sex discrimination, under Title VII, and age discrimination, under the ADEA.  Sovran moves for summary judgment on both of Reynolds' claims.  Reynolds opposes the motion.[2]

## II

Because Reynolds will bear the burden of proof at trial on her claims for discrimination under the ADEA and Title VII, Sovran can meet its summary judgment obligation by pointing to the absence of admissible evidence to support Reynolds' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once Sovran does so, Reynolds must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Reynolds' favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Reynolds' failure to produce proof as to any essential element of a claim renders all

---

[2]On September 21, 2015 Reynolds filed a motion for leave to file a supplemental brief to call the court's attention to a July 16, 2015 decision of the Fifth Circuit and a decision of the Northern District of Texas by Magistrate Judge Ramirez.  The court grants the motion.

other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if Reynolds fails to meet this burden.  *Little v. Liquid Air Corp.*, 37 F.3d at 1076.

III

The court will consider together Reynolds' age discrimination claim under the ADEA and her sex discrimination claim under Title VII.  The familiar *McDonnell Douglas* burden-shifting framework applies to both claims.[3]

It is unlawful under the ADEA "to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Title VII makes it unlawful for an employer to discriminate against an employee on the basis of her sex.  *See* 42 U.S.C. § 2000e–2(a)(1). To prove her age and sex discrimination claims, Reynolds can rely on direct or circumstantial evidence.  *See, e.g., Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. Appx. 914, 917 (5th Cir. 2015) (per curiam) (ADEA claim); *Dailey v. Whitehorn*, 539 Fed. Appx. 409, 411 (5th Cir. 2013) (per curiam) (Title VII claim).  If Reynolds relies on circumstantial evidence, her claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v.*

_____

[3]In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context."  *Id.* at 175 n.2.  The Court relied instead on a textual analysis of the ADEA to resolve the question whether a plaintiff can succeed on a "mixed-motives" claim of age discrimination.  *Id.* at 175-77.  Absent Supreme Court authority, the court will follow the Fifth Circuit's post-*Gross* precedent and apply *McDonnell Douglas* to ADEA cases.  *See, e.g., Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757, 759 (5th Cir. 2014) (per curiam) (applying *McDonnell Douglas* framework to ADEA claim).

*Green*, 411 U.S. 792 (1973).  *See, e.g., Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam) (Title VII and ADEA claims); *Munoz v. Seton Healthcare, Inc.*, 557 Fed. Appx. 314, 321 (5th Cir. 2014) (per curiam) (Title VII and ADEA claims). This framework consists of three stages.

First, Reynolds must establish a *prima facie* case of discrimination, which "creates a presumption that [Sovran] unlawfully discriminated against [her]."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).[4]

Second, the burden shifts to Sovran to articulate a legitimate, nondiscriminatory reason for the employment action taken against Reynolds.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Sovran's burden is one of production, not proof, and involves no credibility assessments.  *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).  This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons."  *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 255).

Third, once Sovran has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by [Reynolds'] prima facie case disappears," *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005), and "the burden shifts back to [Reynolds] to make an ultimate showing of

---

[4]Sovran assumes for purposes of this motion that Reynolds has established a *prima facie* case.  Because the *prima facie* case step is not at issue, the court will not set out the elements of a prima facie case.

intentional discrimination," *Campbell v. Zayo Grp., LLC*, 2015 WL 3903539, at *3 (N.D.

Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439

(5th Cir. 2012)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143

(2000).  For a title VII claim, Reynolds must prove either that (1) "[Sovran's] reason is not

true, but is instead a pretext for discrimination" (pretext analysis) or (2) "[Sovran's] reason,

while true, is only one of the reasons for its conduct, and another motivating factor is

[Reynolds'] protected characteristic" (mixed-motive analysis).  *Rachid v. Jack in the Box,*

*Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotations omitted).  For an ADEA claim,

however, Reynolds must prove either that (1) "[Sovran's] proffered reason was not true—but

was instead a pretext for age discrimination" (pretext analysis) or (2) "even if [Sovran's]

reason is true, [she] was terminated because of [her] age" ("but for" analysis).  *Flanner*, 600

Fed. Appx. at 918 (footnotes and internal quotation marks omitted).  Under the ADEA, "a

reason cannot be proved to be a pretext for discrimination unless it is shown both that the

reason was false, and that discrimination was the real reason."  *Id.*  In other words, the

causation standard under the third stage of *McDonnell Douglas* differs for ADEA and Title

VII claims because, under Title VII, Reynolds need only prove that her sex was *a* motivating

factor in the employment decision, but, under the ADEA, she must prove that her age was

the "but for" cause (*the* reason) for the employment decision.  *See Gross v. FBL Fin. Servs.,*

*Inc.*, 557 U.S. 167, 180 (2009) ("Unlike Title VII, which has been amended to explicitly

authorize discrimination claims where an improper consideration was 'a motivating factor'

for the adverse action, . . . the ADEA does not provide that a plaintiff may establish

discrimination by showing that age was simply a motivating factor."); *Reed*, 701 F.3d at 440

(citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)) ("Under the ADEA,

a plaintiff must prove that age was the 'but for' cause of the challenged adverse employment

action."). At the summary judgment stage, of course, Reynolds is only obligated to raise a

genuine issue of material fact regarding pretext. *See, e.g., Jackson v. Fed. Express Corp.*,

2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has

satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's]

discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and

material fact issue regarding the ultimate question of discrimination.").

"Although intermediate evidentiary burdens shift back and forth under this

framework, '[t]he ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

*Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

IV

The court first considers whether Reynolds has proffered direct evidence of

discrimination. Reynolds contends that Bagwell's comment, "You really want to hire a man

if you can because, I don't care what they say, a man can do things around the facility that

a woman can't," Compl. 3-4, is direct evidence of sex discrimination because it refers to

women in general.[5] Direct evidence is "evidence that, if believed, proves the fact of

---

[5]In her motion for leave to file a supplemental brief, Reynolds appears to concede that
this statement is circumstantial evidence. The court will address this issue, however, because

discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Id.* at 897-98. "Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment." *Reed*, 701 F.3d at 441. The "[remarks] must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)); *see also Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) (quoting *Bowe v. Exide Corp.*, 2001 WL 705881, at *3 n.1 (N.D. Tex. 2001) (Fitzwater, J.)) ("'Such evidence typically involves statements made by the employer or certain of its personnel that indicate that an employment decision was based on a forbidden factor.'").

The court holds that the evidence on which Reynolds relies is not direct evidence of discrimination because it was not made proximate in time to Reynolds' termination and was not related to her termination. *See Auguster*, 249 F.3d at 405 (noting that comments were

---

it is unclear whether Reynolds has changed her position. Reynolds also asserts that Bagwell's later comment that "a man is a preferable hire" is circumstantial evidence. Accordingly, the court will not address that comment in this section.

made by decisionmaker and related to plaintiff, but holding that they were stray remarks because they were made almost one year before the decision, and there was no substantial evidence that they related to the decision).  Bagwell's comment occurred more than one year before Reynolds was terminated and thus was not proximate in time to the employment decision.  *See id.*; *see also Akop*, 2006 WL 119146, at *3 (concluding that comment made to employee that he "must have Alzheimer's disease" did not constitute direct evidence because it "occurred eight months before his termination and was not proximate in time to the employment decision at issue").

Additionally, Reynolds has not presented any evidence, and the comment itself does not show, that it was related to the decision to terminate her.  *See Auguster*, 249 F.3d at 405. The court addressed a similar comment under similar circumstances in *Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *3-4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.), *aff'd*, 72 Fed. Appx. 112 (5th Cir. 2003).  In *Read* the court concluded, *inter alia*, that a comment—"[t]hese girls back here are not working very hard and what I'd like to do is for us to hire a young man just out of college who will work his . . . buns off"—was related to the hiring of an assistant for plaintiff and thus was not sufficiently related to plaintiff's termination.  *Id.*  In the present case, Reynolds testified that Bagwell made this comment in the context of hiring an assistant for her, just as in *Read*; that she did not recall Bagwell's making the comment in reference to any other position; and that, at the time the comment was made, she did not think it was aimed at being discriminatory towards her.  Reynolds' contention that this comment proves Sovran's discriminatory intent requires an inference or presumption.

Accordingly, it is not direct evidence of discrimination. *See, e.g., Sandstad*, 309 F.3d at 897-98.

V

Because Reynolds has not introduced direct evidence of discrimination, the court will apply the *McDonnell Douglas* framework to her age and sex discrimination claims. Sovran assumes for the purposes of this motion that Reynolds has established a *prima facie* case for each of her claims. *See supra* note 4. Reynolds concedes that Sovran has articulated a legitimate, nondiscriminatory reason for terminating her. Sovran has introduced evidence that it terminated Reynolds for the following reasons: she had multiple customer service issues; she supplied a customer with false information and falsified her supervisor's telephone number; and she fraudulently lied to, misled, and deceived a customer who wanted to lodge a complaint against her. Accordingly, the court will proceed to the third step of the *McDonnell Douglas* framework and determine whether Reynolds has introduced sufficient summary judgment evidence for a reasonable jury to find in her favor.

VI

A

Reynolds contends that Sovran's proffered reasons for terminating her are pretextual.[6]

---

[6]The only time that Reynolds appears to rely on mixed-motive analysis is when she alleges in her complaint that "a motivating factor in her termination was also *her age*." Compl. 4 (emphasis added). But mixed-motive analysis is unavailable for an age discrimination claim under the ADEA. *See Gross*, 557 U.S. at 175-76 (holding that ADEA does not authorize mixed-motive age discrimination claim); *Reed*, 701 F.3d at 440 (stating that at the third stage of *McDonnell Douglas*, "[u]nder the ADEA, a plaintiff must prove that

- 11 -

Reynolds "may show pretext 'either through evidence of disparate treatment or by showing that [Sovran's] proffered explanation is false or 'unworthy of credence.'"" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). "If [Reynolds] can successfully 'raise a genuine issue of material fact as to whether [she] has established pretext, that will suffice to avoid summary judgment.'" *Sullivan v. Worley Catastrophe Servs., L.L.C.*, 591 Fed. Appx. 243, 247 (5th Cir. 2014) (per curiam) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)). Additionally, Reynolds "must rebut each of [Sovran's] nondiscriminatory reasons in order to survive summary judgment." *Jackson v. Watkins*, 619 F.3d 463, 466-67 (5th Cir. 2010) (per curiam). And to carry her burden, Reynolds "must produce substantial evidence of pretext." *Auguster*, 249 F.3d at 402-03.

## B

Reynolds maintains that she has created a fact issue regarding pretext based on Sovran's having given her three different and contradictory reasons for terminating her employment. She points to Sovran's termination form, which states that she was being terminated for "[s]upplying customer false information and falsifying phone # of supervisor," P. App. 171; Sovran's response to the EEOC, in which its attorney stated that "she was

---

age was the 'but for' cause of the challenged adverse employment action"). Accordingly, the court need not address mixed-motive analysis, and it will address both her claims under the pretext alternative.

terminated for the fraudulent conduct of lying to, misleading and deceiving a customer who wanted to lodge a complaint about her conduct," *id.* at 156; and Bagwell's statement that she was being terminated because she "had too many customer complaints," P. Br. 3.

The court concludes that these statements do not create a genuine fact issue concerning pretext because they do not contradict each other. First, the fact than an employer provides multiple reasons for an employment decision does not of itself make the reasons contradictory. *See, e.g., Hamilton v. Waters Landing Apartment*, 2014 WL 1255839, at *6 (N.D. Tex. Mar. 27, 2014) (Fitzwater, C.J.) (concluding that employer, who first "offered no explanation why [employee] was being let go, then stated that she did not keep up the white boards, then stated that [she] was not able to do the job of property manager, and finally stated that he did not trust her," provided different explanations, but the explanations were not materially inconsistent), *aff'd*, 593 Fed. Appx. 314 (5th Cir. 2014), *cert. denied*, ___U.S.___, 135 S.Ct. 1748 (2015). Second, all three of Sovran's proffered reasons revolve around the incident in which Reynolds gave the wrong telephone number to a customer who wished to speak to a manager about a decision of Reynolds with which the customer disagreed. The termination form and EEOC response use different words to explain why Reynolds was terminated, but the fundamental reason expressed in both is the same: Sovran's belief that she acted deceptively on this occasion. And although Bagwell's comment focused on the number of customer complaints rather than Reynolds' deceptive conduct when dealing with the one particular customer complaint, his reasoning does not contradict the other two explanations. He, too, focused on customer complaints. In fact, his reason can be seen as

"consistent with, and indeed explained by, the more specific reason[s]" provided in the termination form and EEOC response.  *Id.*  The court therefore concludes that the evidence that Sovran offered multiple reasons for terminating Reynolds' employment does not create a genuine fact issue regarding pretext.

C

Reynolds next contends that the lack of any evidence supporting Sovran's reasons for terminating her show that its reasons are false.  Regarding Bagwell's statement that she "had too many customer complaints," Reynolds argues that Sovran has produced evidence of only one customer who allegedly complained, and that she never received any reprimands because of customer complaints while under Bagwell's supervision.  As for giving the customer the wrong telephone number, Reynolds points out that Sovran has produced no documents or evidence showing that she had a "fraudulent intent" to mislead the customer, that Bagwell could neither give the identity of the customer nor give the time in which he talked to the customer, and that, despite her numerous requests, Sovran has not revealed the identity of the alleged customer and has not provided her with any evidence showing that Bagwell, Osciak, or anyone else in HR made any notes or documented anything about the incident. Reynolds also relies on the fact that Sovran terminated her without warning and did not follow any formal disciplinary process before terminating her.  She maintains that when a complaint about an employee arises, it is good employment practice for the employer to follow a formal disciplinary process in which the employer documents the complaint in writing, investigates the complaint, shows the complaint to the employee, allows the

employee to defend herself, mentors the employee, and gives the employee warnings before terminating her. Reynolds asserts that Sovran's Employee Handbook provides for a similar process.

Even when the evidence is viewed in the light most favorable to Reynolds and all inferences are drawn in her favor, the evidence does not create a genuine fact issue regarding pretext. Reynolds has failed to point to summary judgment evidence that would enable a reasonable jury to find that Sovran deviated from its formal disciplinary practice. Reynolds does not include the relevant parts of Sovran's Employee Handbook in the summary judgment record, and, in support, she only offers testimony that she "believed" Sovran adopted a similar process to the one she described. Moreover, Reynolds' unsubstantiated and subjective beliefs and opinions regarding good employment practices are insufficient to create a genuine fact issue. *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.").

Additionally, it is uncontested that Reynolds was aware of at least two customer complaints against her at the time she was terminated: the incident involving the telephone number, and another involving a potential customer who complained about how she provided driving instructions to her store. It also is uncontested that Bagwell spoke to Reynolds about the incident involving driving instructions; that Reynolds gave a customer her telephone number instead of the telephone number he requested; and that Atkison sent Bagwell an

email detailing the incident between Reynolds and that customer, which Bagwell forwarded to HR.  At most, this evidence would enable a reasonable jury to find that Sovran made a mistake when it decided to rely on the information Atkison provided in the email, without fully investigating the customer complaint.  But mere evidence that an employer made a mistake in terminating an employee does not create a genuine fact issue regarding pretext, because "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.  We do not try in court the validity of good faith beliefs as to an employee's competence.  Motive is the issue." *Duff v. Farmers Ins. Exch.*, 2014 WL 1577786, at *12 (N.D. Tex. Apr. 21, 2014) (Fitzwater, C.J.) (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d at 379 (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)) (holding that when employer discharges an employee based on complaints lodged by another employee, the issue is not the truth or falsity of the allegation, but "whether the employer reasonably believed the employee's allegation and acted on it in good faith"); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Grimsley v. Richardson Hosp. Auth.*, 2012 WL 4739911, at *7 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) (quoting *Rosenblatt v. 7-Eleven, Inc.*, 2007 WL 2187252, at *11 (N.D. Tex. July 27, 2007) (Fitzwater, J.)).  Consequently, employers can be completely mistaken in their decisions to terminate employees without violating the ADEA or Title VII.  *See Duff*, 2014 WL 1577786, at *12 ("Federal anti-discrimination laws protect against unlawful discrimination, not against employer mistakes.").  Reynolds has not raised a genuine fact issue as to whether the Sovran employees who made the decision to terminate her believed that she had too many customer complaints, supplied a customer with false information, and/or fraudulently lied to, misled, and deceived a customer.  She has therefore failed on this basis to raise a genuine fact issue regarding pretext.

## D

Reynolds also maintains that her good evaluations, her special recognitions, and the lack of any record of prior discipline makes it unlikely that she would intentionally and fraudulently try to mislead or deceive a customer or that she had too many customer complaints.  Reynolds points out that the store she managed received satisfactory monthly evaluations from Bagwell for the two months preceding her termination; her store scored a 100% on the 2013 internal audit for which she was given a congratulatory letter, gift card, and shout out in the company bulletin, a few weeks before her termination; and her store was ranked 10th out of 133 stores evaluated in 2012.

Reynolds' evidence is insufficient to create a genuine fact issue.  Sovran does not deny that, at times, or even in most aspects, Reynolds performed in her position well.  Sovran

posits that Reynolds handled customer service issues poorly on at least two occasions.  It is undisputed that, on one occasion, Reynolds gave her own telephone number to a customer who wished to speak to a manager about a decision of Reynolds with which the customer disagreed.  On another occasion, a potential customer complained about how Reynolds provided driving instructions to her store.

And Sovran has offered evidence that it terminated Reynolds because it believed she had acted deceptively when dealing with a customer who wanted to complain about her conduct.  Reynolds' evidence that she had received good evaluations and special recognitions would not enable a reasonable jury to find that the reasons Sovran has provided for terminating her are pretextual.  Terminating a manager for perceived dishonesty—especially engaging in deceptive conduct directed at a customer—is not at all inconsistent with having previously given the manager satisfactory monthly evaluations, the manager's store's having performed well on an internal audit, and the store's positive comparative ranking.  This is so because, despite the manager's prior performance, the employer's belief that the manager acted deceptively compromises, if not destroys, the trust and confidence placed in the manager that is an essential facet of the employment relationship.  It is misconduct that by its nature is so serious that, if the employer believes it has occurred, justifies termination despite the positive employment history that preceded it.

E

Reynolds next contends that Bagwell's comments to her provide circumstantial evidence of discriminatory intent.  She alleges that, when she was preparing to hire an

assistant manager, Bagwell stated, "You really want to hire a man if you can because, I don't care what they say, a man can do things around the facility that a woman can't."[7]  Compl. 3-4.  Reynolds asserts that, as a result of this statement, she hired a male.  Reynolds also relies on a similar comment—"a man is a preferable hire"—that Bagwell made to her when they were filling her assistant manager position a second time.  She maintains that Bagwell hired Atkison, a male, for the position, without her input.  Reynolds also maintains that Bagwell once told her that she should be, or appear to be, more "friendly and bubbly" toward people.  And she asserts that Bagwell made numerous statements to her about how some people are not happy in their jobs, she might be happier doing something else, and maybe she did not like working for Sovran.

To qualify as circumstantial evidence of intentional discrimination, a remark must "first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker."  *Laxton*, 333 F.3d at 583 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)); *see also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015); *Reed*, 701 F.3d at 441; *Sandstad*, 309 F.3d at 899.  Reynolds has satisfied the second requirement as to all of Bagwell's remarks because Bagwell was Reynolds' direct supervisor and was a participant in the decision to terminate her.  The question therefore becomes whether Reynolds has satisfied the first requirement.

---

[7]The court concludes *supra* at § IV that this comment is circumstantial evidence.

Bagwell's comments that Reynolds should be more "friendly and bubbly" toward people and that she was not happy in her job and should consider quitting neither implicate age nor sex nor demonstrate discriminatory animus on either basis.

Bagwell's statements that Reynolds should hire a man and that a man is a preferable hire do implicate sex, but they do not raise a genuine issue concerning discriminatory animus because Reynolds has "failed to establish any meaningful connection between [Bagwell's] comments and her termination." *Hamilton*, 2014 WL 1255839, at *5 (citing *Bissett v. Beau Rivage Resorts, Inc.*, 442 Fed. Appx. 148, 153-54 (5th Cir. 2011) (per curiam)) ("[E]ven assuming that [the] statement about a different employee is somehow relevant to [plaintiff's] discharge, this piece of evidence is insufficient to create an issue of material fact.") (alterations in original); *see also Read*, 2002 WL 22060, at *9 n.6.  The summary judgment evidence indicates that Bagwell did not make the comments regarding hiring a male in connection with Reynolds' termination.  He made these comments when considering someone for the position of Reynolds' assistant manager; they were made more than eight months before Reynolds was terminated; and Reynolds acknowledged that, at the time the statements were made, she did not think they were intended to be discriminatory toward her. Thus Bagwell's comments would not permit a reasonable jury to find that Sovran's legitimate, nondiscriminatory reasons for terminating Reynolds' employment are pretextual.

F

Reynolds maintains that the fact that she was terminated and replaced by a male who was substantially younger than she shows that Sovran's reasons are false, and that her age

and sex are reasons for her termination.  Reynolds only points out that she was a 53-year-old female when she was terminated and that Atkison was a 27-year-old male when he replaced her.  The mere fact that Sovran subsequently hired a younger male would not enable a reasonable jury to find either that Sovran's legitimate nondiscriminatory reasons are false or that age or sex played a role in Sovran's decision to terminate Reynolds.  Reynolds does not dispute that Sovran initially offered her position to a female—who turned it down—before offering it to Atkison.  *Cf. Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (holding that, although not outcome determinative, fact that plaintiff's position was immediately filled by member of same protected class was material to question of discriminatory intent).  This evidence would not permit a reasonable jury to find that Sovran's legitimate, nondiscriminatory reasons are pretextual.

## G

Reynolds also posits that Bagwell set her up to be discharged, and she points to four pieces of summary judgment evidence to support her assertion.  First, Reynolds relies on Atkison's deposition testimony that he "*think[s]* that customer was just out to get [Reynolds];" he "*personally believe[s]*" that Bagwell tried to set Reynolds up; he "*just think[s]*" that Bagwell is "a backstabber" who "do[es]n't care about his managers or associates;" and he "*personally think[s]*" Bagwell did not like Reynolds because "she was really good at what she [did], and that's just [his] personal opinion."  P. App. 180, 186, 188 (emphasis added).  This evidence represents nothing more than Atkison's subjective beliefs and opinions, which is inadequate to create a genuine fact issue.  *See, e.g., Islamic Ass'n of*

*DeSoto, Texas, Inc. v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 169229, at

*7 n.11 (N.D. Tex. Jan. 16, 2013) (Fitzwater, C.J.) (citing *Morris v. Covan World Wide*

*Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th

Cir. 1994)) ("Unsubstantiated and subjective beliefs and conclusory allegations and opinions

of fact are not competent summary judgment evidence."); *see also Nobles v. Cardno, Inc.*,

549 Fed. Appx. 265, 267 (5th Cir. 2013) (per curiam) (citing *Waggoner*, 987 F.2d at 1164)

(Plaintiff "must do more than speculate; he must prove that the articulated reasons for his

termination are a pretext.  Mere subjective assertions, without more, are insufficient.").

Second, Reynolds relies on her deposition testimony that "*[i]t seemed* that [Bagwell]

was kind of targeting me to try to persuade me to quit;" that "*I believe* that [Bagwell] wanted

to get [Atkison] in the position;" and that she told Atkison, "*I felt* like [Bagwell] was trying

to get me to quit."  P. App. 13 and 38 (emphasis added).  Reynolds' subjective belief that she

was discriminated against is likewise insufficient to meet her summary judgment burden.

*See Little v. Republic Refining Co.*, 924 F.2d at 96 ("An age discrimination plaintiff's own

good faith belief that his age motivated his employer's action is of little value."); *see also*

*Andrews v. Schneider Logistics, Inc.*, 2014 WL 6460010, at *6 (N.D. Tex. Nov. 18, 2014)

(Fitzwater, J.) (citations omitted) (holding, *inter alia*, that plaintiff had not produced evidence

of pretext because he relied on his conclusory assertion that defendant "wanted to terminate

[him], so [it] used the email to achieve that goal" without a proper citation to the summary

judgment record) (alterations in original).

Third, Reynolds relies on part of Atkison's email to Bagwell, in combination with

Atkison's testimony regarding the email.  It is undisputed that Atkison first told Bagwell about the incident verbally, and, at Bagwell's request, sent him an email detailing the incident, and that Atkison's email to Bagwell contained additional complaints against Reynolds.  Reynolds maintains that Bagwell instructed Atkison to include additional complaints about her in the email; that Bagwell told Atkison what particular complaints to include; and that Atkison included everything negative that he personally knew or had heard about her.  Relying on the "same actor" inference,[8] Sovran contends that "[i]t is illogical that the same employee, Bagwell, who gave [Reynolds] high marks on store visits, would then turn around and discriminate against her based on her age or her gender."  D. Br. 25. Reynolds has not responded to Sovran's argument, but the court need not consider it because this evidence, alone or in combination with the other three reasons, is insufficient to raise a genuine fact issue.

Fourth, Reynolds relies on the deposition testimony of Tammy Vega ("Vega"), an associate manager under Atkison.  Vega testified that Atkison told her that "he [Atkison] had set [Reynolds] up to get fired," and "[h]e wanted her apartment and that [he] and [Bagwell] were trying to get rid of [Reynolds]."  P. App. 195.  Sovran objects to this evidence as

_____

[8]The "same actor inference" provides that when "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created."  *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)).

hearsay.[9]  Reynolds responds that the evidence is admissible under the hearsay exclusion found in Fed. R. Evid. 801(d)(2)(D).[10]

Even if the court assumes *arguendo* that Atkison's statements are admissible under Rule 801(d)(2)(D), Sovran is still entitled to summary judgment.  Evidence that Atkison set Reynolds up to be fired and wanted her apartment, and that he and Bagwell were trying to get rid of her, would not enable a reasonable jury to find that Atkison or Bagwell acted based on Reynolds' sex or age, or that Sovran was aware of their motives when it terminated her on the basis that she had engaged in deceptive conduct involving a customer.

---

[9]Reynolds testified that she heard that other women were terminated by Sovran or harassed by Bagwell.  Sovran objects to this evidence as hearsay.  Although Reynolds has not responded to the objection, there is no indication that she intends to rely on this evidence.  Accordingly, the court need not address Sovran's objection.

[10]Sovran made its objections in its summary judgment reply.  Reynolds moved for leave to file a "reply brief" to Sovran's reply.  The court granted the motion in part, and it permitted Reynolds to respond to Sovran's evidentiary objections.  In her April 22, 2015 reply, Reynolds states that "[a] ruling on this objection is actually mooted, because Atkison's deposition testimony itself makes clear that he and Bagwell conspired to get Reynolds fired." P. Apr. 22, 2015 Reply 2.  On September 21, 2015 Reynolds filed a motion for leave to file a supplemental brief to call the court's attention to a July 16, 2015 decision of the Fifth Circuit and a decision of the Northern District of Texas by Magistrate Judge Ramirez.  In her proposed supplemental brief, Reynolds maintains that *Alba v. Loncar*, 2004 WL 1144052 (N.D. Tex. May 20, 2004) (Ramirez, J.), supports the conclusion that, under Rule 801(d)(2)(D), Vega's testimony is not hearsay.  *See* P. Sept. 21, 2015 Supp. Br. 2.  Citing *Alba*, Reynolds contends that statements need only concern a matter within the scope of the employment of the person making the statement, and, as Vega's supervisor, Atkison was responsible for her training and his comments about the plan to set Reynolds up for termination were made in the process of that training.  *Id.*

VII

Finally, the court will consider whether this is a case in which no rational factfinder could conclude that Reynolds' termination was discriminatory, even if the court assumes that her prima facie case, combined with sufficient evidence to find that Sovran's asserted justifications are false, might permit a reasonable jury to find that Sovran unlawfully discriminated. This result is permitted where the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or where the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there is abundant and uncontroverted independent evidence that no discrimination has occurred.

A

The Supreme Court explained in *Reeves* that

> [a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citing *Aka v. Washington Hosp. Ctr.*, 156

F.3d 1284, 1291-92 (D.C. Cir. 1998); *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1338 (2d Cir. 1997) ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent.")).  "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Id.* at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524).  "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (alteration, emphasis and ellipses in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519).  Thus "[i]t is 'possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.'"  *West*, 330 F.3d at 385 (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000)).

B

According to Reynolds, Atkison and Bagwell had been good friends for years before Bagwell hired Atkison.  She maintains that they

> conspired to terminate her on false grounds in order to give [her] job, salary, and the free apartment [that came with her job] to Atkison; that, in doing so, they illegally discriminated against and cause the termination of [Reynolds] in order to benefit Atkison, who was a younger, male employee.

D. App. 114; *see also* P. Br. 1.  Assuming *arguendo* that the summary judgment record establishes that these assertions are true, and that Bagwell alone made the decision to

terminate her, or that the other decisionmakers merely rubberstamped his decision, Reynolds has conclusively proved that Sovran's reasons for firing her are false and the real reasons are "some other, nondiscriminatory reason[s]"—a desire to give the manager position, salary, and free apartment to a long-time friend, who happened to be a younger male. *See Reeves*, 530 U.S. 133 at 148. This is not a "real" reason that is related to age or sex discrimination any more than it would be related to race discrimination if Reynolds and Atkison were of different races. It so happens that Atkison—whom Reynolds alleges benefited from Bagwell's friendship and favoritism—is younger than she and is a male. *See id.*; *Nieto*, 108 F.3d at 624 (holding that employee's claim that employer was "out to get him" because he was successful at "what he was doing," even if true, did not support a discrimination claim because "Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus") (alterations and ellipses in original) (citations omitted).

## C

Alternatively, even if Sovran is not entitled to summary judgment on the ground that the record conclusively reveals some other, nondiscriminatory reason for its decision to terminate Reynolds, it would still be entitled to summary judgment on the basis that Reynolds has created, at most, only a weak issue of fact, and there is abundant, uncontroverted evidence that no age or sex discrimination occurred. *See Reeves*, 530 U.S. 133 at 148; *see also Smith v. Hewlett-Packard Co.*, 512 F.Supp.2d 587, 601-02 (N.D. Tex. 2007) (Fitzwater, J.) (noting that summary judgment is appropriate where there is a "weak

issue of fact" and "abundant and uncontroverted evidence that no discrimination occurred");
*Rosenblatt*, 2007 WL 2187252, at *12-13 (granting summary judgment where, assuming fact issue on question of pretext existed, fact issue was "weak," and there was no evidence that employee's age was ever considered in employer's decision to terminate his employment).

Regarding her age discrimination claim, Reynolds was over age 40 when Sovran hired her.  There is no evidence that anyone at Sovran ever made any negative age-related comments about Reynolds or anyone else, and there is no evidence that age was ever considered in any respect in the decision to terminate her employment.  Reynolds does not contend that there is such proof, and she cites none in her briefs.

As for her sex discrimination claim, there is no evidence that anyone at Sovran ever made any negative sex-related comments about Reynolds or her position, and there is no evidence that Reynolds ever believed, at the time comments about sex were made to her, that any comment was aimed discriminatory toward her or her position.  There is also no evidence that sex was ever considered in any respect in the decision to terminate her employment.  Reynolds' case relies on pretext alone.

There is abundant proof, however, that age and sex did not play a role in Sovran's determination.  As noted, the summary judgment record establishes that Sovran hired Reynolds when she was over 40 years old, and, when Reynolds was terminated, Sovran initially offered her position to a female.  The evidence shows that Reynolds had at least two customer service incidents—the incident where a potential customer complained about how Reynolds provided driving directions to the store, and the incident in which Reynolds

provided a customer with her telephone number instead of the number he requested, which Sovran believed to involve dishonest conduct.  The court therefore concludes that Reynolds has failed to adduce evidence that would permit a reasonable jury to find that Sovran's legitimate, nondiscriminatory reasons are pretextual.  Accordingly, Sovran is entitled to summary judgment dismissing Reynolds' age discrimination claim under the ADEA and her sex discrimination claim under Title VII.

*   *   *

For the reasons explained, the court grants Sovran's motion for summary judgment and dismisses Reynolds' ADEA and Title VII claims with prejudice by judgment filed today.

**SO ORDERED**.

October 27, 2015.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE